3-16-0-4-1-4 People of the State of Illinois have a leak of John Toretto v. Osvaldo v. Jose Nicolas appellant by Deborah Nowe. There's Nowe. Good afternoon. May it please the court, counsel, and Deborah Nowe from the Office of the State of Illinois defender of the appellant Osvaldo v. Jose Nicolas. The evidentiary hearing in this case established that plea counsel either disregarded Mr. Nicolas' direct request for an appeal or failed to consult with him about an appeal. The hearing also established that consultation was required because counsel knew that Mr. Nicolas was unhappy with his unfairly long sentence and because the proceedings were seriously flawed. Yet no court has ever refused those proceedings for error. Because of direct demand for Nicolas to file a motion of withdrawals plea would best further the interests of both justice and judicial economy, I plan to focus on Argument 1. But I'll of course be glad to answer any questions about the other arguments. Argument 1 presents two separate bases for reversal. First, plea counsel failed to honor Nicolas' direct request to do what was necessary to file an appeal. Nicolas clearly conveyed his wishes for immediately after sentencing. He told counsel, quote, I wanted to retract my guiltiness. Nicolas, an uneducated 22-year-old who spoke no English, reasonably relied on a Spanish-speaking attorney to follow the correct legal procedure to initiate a time of appeal. And the only way to appeal was to file a motion of withdrawal plea. Instead, plea counsel filed an untimely motion to reconsider sentence without reviewing the transcripts or speaking with his client. Because of this improper filing, Nicolas lost his right to address his guilt. This court should therefore reverse and remand on this basis because the evidentiary hearing established that counsel was constitutionally ineffective. However, there's also another basis for reversal, where Nicolas established that plea counsel violated the duty to consult. For he knew that Nicolas was unhappy with his unfairly long sentence, and the motion of withdrawal plea was the only way for him to challenge that sentence. And the record shows that there was a conversation that counsel had with Nicolas immediately after the plea, I'm sorry, after sentencing. And that counsel did not explain the options about what he needed to do to appeal. And separately, counsel had a duty to consult because a rational defendant in Nicolas' circumstances would have wanted to appeal, given that there were two non-criminalist claims that could have been reached with a motion of withdrawal plea, as well as a valid defense. Let me ask you this. What's our standard of review on this? There was a third stage hearing, correct? Correct, Your Honor. So, issue one, standard of review, is reviewing for manifest error. And didn't plea counsel say that up until four months after trial, the defendant never said he wanted to appeal? Plea counsel, at the evidentiary hearing, said he didn't recall whether Mr. Nicolas had asked about an appeal. He did say clearly that Mr. Nicolas did not ask him to file a motion to withdraw the plea. But at the testimony at the evidentiary hearing, it was somewhat vague. So, it's important to look at the contemporaneous proceeding, which is that hearing on the motion to reconsider a sentence that happened in 2009. And at that proceeding, plea counsel told the court that he had had a conversation with Nicolas, just as Nicolas had when Nicolas was in the holding cell. And that during that conversation, counsel told Nicolas to let him know how Nicolas wanted to proceed on the motion to reconsider. So, given that, we know there was some sort of conversation in which we knew that counsel knew that Mr. Nicolas didn't like his sentence. And it was up to counsel, as the professional, to do what was necessary to file an appeal when he knew that under Flores were taken off. And, in addition to knowing that Nicolas wanted to appeal, even if he didn't know that, even if counsel didn't know that, he had a duty to consult. Because this record shows at least two cases, or three, in which any reasonable defendant in Nicolas' circumstances would have wanted to appeal. So, first, the improper 402 admonishments, where the trial court accepted the plea without admonishing Nicolas about the potential penalties or ensuring his understanding of the meaning of the term cap. No one ever explained the meaning of cap. And then, it's laid out in the briefs, but the 402 admonishments, the court went through everything. It didn't say the potential penalties until the prosecutor reminded him. And then he said potential penalties. So, at that point, it was very confusing. And he never explained what sentence Mr. Nicolas was actually agreeing to. And then there's prejudice. That might be okay, except that the evidence you're hearing shows that Nicolas was prejudiced, or he testified that he did not, in fact, understand that he would be subject to a sentence of 45 years in prison. So, that provides one basis for a motion to adopt. Which, in turn, means that counsel had a duty to consult when Flores were taken off. Didn't plea counsel, as well as the prosecutor, who also was Spanish-speaking, testify that he seemed to understand everything? The plea counsel did testify that, in his opinion, his client understood everything. But that doesn't suffice for the trial court's admonishments. So, what counsel believed or didn't believe is entirely relevant to what Mr. Nicolas actually knew. When we have on the record that these 402 admonishments were both inadequate, and we have unrebutted testimony from Mr. Nicolas that he, in fact, did not understand his potential sentences. In addition to that, we also have these improper 605C admonishments, which, again, are a standalone claim that could have been raised in a motion to adopt a plea. And those were objectively wrong. The court advised Mr. Nicolas that he could appeal if he filed either a motion to reconsider a sentence or a motion to adopt a plea. Which was wrong. He had to file a motion to adopt a plea. So, therefore, the court failed to substantially comply with 605C, which provides a second basis for a motion to withdraw the plea. Which is such a layered argument. But that, again, provides another reason why plea counsel had an independent duty to consult with Mr. Nicolas. Even if plea counsel, even if this court finds there was no conversation, because of this faulty admonishment, plea counsel should have known that there was a... And the fact that he knew that Mr. Nicolas was unhappy with his sentence means that counsel had a duty to consult with Mr. Nicolas, which we know he did not. And the third reason is that if Mr. Nicolas were able to withdraw his guilty plea, which, again, everything we're doing today is just for him to be able to go back and file a motion to withdraw. So, let's say we succeed today and he does, in fact, file a motion to withdraw the plea. It would be rational for him to do that because he has a valid defense to this murder charge. Where there is some evidence in which a jury could find that he committed involuntary manslaughter and not murder. So, for all of these reasons, this court should reverse the remand with orders that counsel be appointed to help Nicolas file a motion to withdraw the plea. Pursuant to argument 1. Alternatively, we ask that this court remands for a new evidentiary hearing pursuant to argument 2. Or, at the very least, new second stage proceedings to write counsel pursuant to argument 2. And if you have no other questions, I'd like to reserve my time for a bubble. You don't have to reserve time. Okay. Thank you. Mr. Arando. Thank you, Your Honor. At this court, I feel in your honor, counsel, this is a pretty simple case. The defendant's post-conviction petition alleged that he asked counsel to withdraw his plea. The court found this to be his plea counsel's testimony to be credible. He cited it as the basis for his decision. And like I said, that didn't happen. As far as the allegation of Flores Ortega that should have been raised, he should have consulted. That wasn't actually part of the petition. The petition only raised that he asked for and was denied by counsel the motion to withdraw. Again, because his testimony was, it didn't happen. Anything else that has raised the defense, or the argument, appeal his unique claims that were not included in the post-conviction petition. The inaccuracy of the oral two acknowledgments were not raised in the post-conviction petition. The 605 scandal claim is the same old claim not raised in the post-conviction petition. The claim of reckless homicide, or reckless conduct, was not raised in the post-conviction petition. Even if any of these were raised, of course they were frivolous and without merit. I'm not sure how one could claim that the oral acknowledgments were woefully inadequate when they were all given at the time of the plea, even though the prosecutor did have to remind the judge that that's exactly what you want judges to do. If you forget something, you have it brought to their attention and the judge does what he or she is supposed to do. The 605 acknowledgments, we agree that it should have been limited to the withdrawal of the guilty plea, except of course, as cited in the quadrant, I believe, the defendant was put on notice that he had to do something within a period of days and did nothing. Again, the sole business testimony was that a conversation did not happen. And as far as withdrawal, as a viable offense of reckless homicide, I cite in the brief the defendant's admission on the videotape recording that he strangled the victim with all of his might so that his cause was barely in shape and he could do this for about three minutes. That's not anywhere near reckless homicide. We will, since counsel has not stood with our three, two or three, I don't know, standard three contemplating arguments. So if there are questions, we will pass this workbook now.  Go ahead. Is it your position that the attorney didn't have to file a motion to withdraw the guilty plea unless his untrained non-English speaking client asked him to do that? Yes. I mean, again, our position is that the request should have been acknowledged or should have consulted with him. But even if it had been, the defense counsel testified that he met with the defendant afterwards. The only thing that the defendant was not satisfied with his sentence, but Mr. Wilk has testified that he understood the parameters of the plea agreement. It doesn't seem like he could have. If you pled guilty under a plea agreement and then you found out that when the plea agreement was done that you had been sentenced to more time than you thought you were going to be, doesn't that seem like he didn't understand? No. With respect to that, there's no indication in the record that he didn't understand that the emotions given were, this is the path, this is how it went through. I mean, we're saying our brief actually went through each of the four or two emotions. The only thing that he didn't initially say was the sentencing range was 20 to 40 years. But he knew that there was a 45-year path and Mr. Wilkers and Judge Cotillard, who came back and testified, said that the Spanish interpreter was giving the correct information. I hear what you're saying. The problem that I'm having is that if he understood, then it doesn't seem like at the end of the hearing he would have thought that he had been sentenced to too much time, and presumably he agreed to that. Yes, he did. So apparently he didn't understand. I don't know, you're not speaking English. Well, being dissatisfied with the maximum sentence that you agreed to  I don't know how better to ask the question. But you're saying he understood that what he got, he was going to get. He understood that was, yes, he agreed that he would get a 45-year cap and at the end of the sentencing area, that's what he got. He might dislike that, but that was the agreement. That's no basis for withdrawing a guilty plea, saying that, oh, I got a 45 years, I'll get that by the age of 45 years. He understood, but he also understood, implicitly, that he could have got something less. In other words, that that was the cap. And he was unhappy that he got the maximum cap down on that. But again, that's not a basis for withdrawing a guilty plea. Thank you, Your Honor. Thank you. Ms. Nelson, rebuttal. Thank you. So first, this is not a simple case. I think that's the mistake that everyone made at the proceedings on the amendment petition. It's a seemingly simple case, but when you scratch the surface, it's not at all simple. I think the thing that is clear, though, is that Aspenson-Nicholas' post-conviction claim is that the counsel provided ineffective assistance by failing to perfect his direct appeal so they filed him the proper, timely post-conviction motion. Well, but the testimony from his plea counsel was that he never asked him to do that within the 30 days. It was like four months later when he contacted him and said, hey, I want to do something. The testimony from plea counsel was, again, kind of vague. He was very specific that Mr. Nicholas never explicitly asked him to file a motion to withdraw the plea. Plea counsel didn't remember if Nicholas had asked him to appeal. And it's clear from when you read the entire record that plea counsel did know that there was some discussion in filing a motion to reconsider a sentence, which that alone would be, that's the wrong motion to file. So counsel, as a lawyer, should know that that was the wrong motion and that if there was something he needed to do to file a post-conviction motion, he needed to file the correct motion. So to hold it against Mr. Nicholas that his attorney filed the wrong motion or that Mr. Nicholas, after having been misadvised, didn't ask exactly the right way, I think would be deeply unfair. Well, whatever motion he filed four months afterwards would have gone nowhere, correct? The fact that he filed an untimely motion is, again, not Mr. Nicholas' fault because when we go to the record, it's clear that counsel, and I'm going to disagree with my opposing counsel, because Lopez's testimony at the evidentiary hearing established that there was a conversation that took place in the holding cell. So he and my client agreed that there was some conversation that took place in the holding cell. My client testified that it went one way. Mr. Lopez's testimony does not completely contradict my client's testimony because it's so vague. And when you look at it in combination with the contemporaneous statements that Mr. Lopez made at the hearing on Rochelle Ekins and her sentence, it seems pretty clear that Mr. Lopez knew that Mr. Nicholas wanted his attorney to file something to help him challenge the sentence, which is the only thing he could have filed. The proper thing would have been a motion to appeal. And the trial judge found, after listening to everything, that it was not made clear, or you discussed with the plea counsel, that the defendant wanted to withdraw his plea. It's true. I think that's where this case becomes less simple, even on appeal, because at the evidence hearing, the trial court improperly limited the scope of the issue that was presented. PC counsel said, I need to get into the underlying themes. The trial court said, no, that's wrong. It's a very simple issue. And so I think that, although the relief that we're asking for is on issue one, which is a manifesto of the evidence, issues two and three inform the analysis for argument one. However, even if this court disagrees with argument one, it could still grant relief on argument two, or argument three, which is the no vote review. And I just want to quickly, like, in terms of what counsel said about the 402 at Washington and 605C not being a scandal of claims, they are not scandal of claims. They're simply arguments on appeal that support reversal, because they show that there was grounds for a motion to withdraw a plea, which is required for us to show, in order to show prejudice under the Flores-Arteaga. And... One minute. Thank you. Um... I think that is all I have. Do you have a point for the question? Thank you so much. You're from the First District? I am. Okay, well, welcome to the Court of Appeal. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement. Thank you. Thank you.